[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11860
Non-Argument Calendar
_____

Agency No. A216-372-310


ALEJANDRO JOSE BARRIOS-BARRIOS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 25, 2019)

Before MARCUS, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Alejandro Jose Barrios-Barrios seeks review of an order by the Board of Immigration Appeals (BIA) affirming the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  An Immigration Judge (IJ) denied all three claims based on her determination that Barrios-Barrios was not credible, citing several inconsistencies between his application and hearing testimony.  Barrios-Barrios argues that the BIA erred in affirming that decision because the inconsistencies were—in his view—explainable, understandable, or otherwise insignificant.  Because substantial evidence supports the agency's adverse credibility determination, we deny the petition for review.

## I.

Barrios-Barrios, a native and citizen of Venezuela, entered the United States in 2016 on a B2 Visa, which allowed him to remain in the country until April 18, 2017.  He overstayed his visit and—about three months after the visa expired—the Department of Homeland Security issued a Notice to Appear charging him with removability.  Barrios-Barrios conceded the charge but requested asylum, withholding of removal, and protection under the CAT.  As support, he claimed that he feared persecution and torture in Venezuela on account of his political

2

opinion—specifically, his "outspokenness toward the socialist regime." Among other things, he asserted that pro-government forces had publicly beaten him; imprisoned, starved, and tortured him for nearly fifteen days; and run his leg over with a truck—all because of his political dissidence.

Barrios-Barrios presented his case, pro se, to an IJ on September 21, 2017. After considering the evidence, the IJ concluded that Barrios-Barrios was not credible based on several inconsistencies between his "written declaration in support of his application" and his "testimony before the Court." Barrios-Barrios varied on several aspects of his story, including the manner and extent to which the government had allegedly harmed him. For instance, he stated in his application that police officers once tortured him by dousing him with water, denying him regular food, and electrocuting his feet and testicles. Yet when describing these events at the hearing, he testified that the police doused him with water, struck his hands with a board, and squeezed his toes with pliers—but that nothing else had happened to him while he was in jail. As another example, Barrios-Barrios initially claimed that, in 2004, "Chavistas" injured "every part" of his body in "an almost fatal beating," but never mentioned that assault at his hearing—not even when asked if "anything" happened to him after 2003.

Given these and other inconsistencies, the IJ deemed Barrios-Barrios "not credible." She also found that the "corroborating documentation" that he

submitted was unavailing in the absence of credible testimony.  Although the background materials described conditions in Venezuela generally, they failed to confirm the specifics of Barrios-Barrios's case.  Even the documents pertaining to Barrios-Barrios only "vaguely" referenced a few incidents of persecution without any "supporting details."  Barrios-Barrios appealed to the BIA, arguing that the inconsistencies on which the IJ relied were "trivial."  The BIA, however, found that they concerned "material aspects of his asylum claim, including the underlying basis for the harm he allegedly suffered, how the harm was allegedly inflicted, and the number of incidents of harm he allegedly suffered."  The agency also agreed that Barrios-Barrios's documentary evidence did not "independently satisfy his burden."  Accordingly, the BIA adopted and affirmed the IJ's decision.  Barrios-Barrios now petitions for review.

## II.

The BIA's factual findings, including credibility determinations, "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *see also Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005) (explaining that a "credibility determination, like any fact finding, may not be overturned unless the record compels it" (internal punctuation and citation omitted)).  We thus review the BIA's adverse credibility determination for substantial evidence, which requires affirming that decision "if it

is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004) (citing *Najjar v. Ashcroft*, 257 F.3d 1262, 1283–84 (11th Cir. 2001)). In doing so, "we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

Moreover, an "adverse credibility determination alone may be sufficient to support the denial of an asylum application." *Forgue*, 401 F.3d at 1287 (citing *D-Muhumed*, 388 F.3d at 819). To be sure, it "does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant." *Id.* But where that other evidence fails to satisfy the applicant's burden, an "adverse credibility determination alone" will suffice to deny an applicant's claims. *D-Muhumed*, 388 F.3d at 819; *see also Lyashchynska v. U.S. Att'y Gen.*, 676 F.3d 962, 967 (11th Cir. 2012) ("An adverse credibility determination coupled with a lack of corroborating evidence for a claim of persecution means that the applicant's claim fails.").

### III.

Barrios-Barrios primarily argues that we should reverse the BIA's adverse credibility finding because it rests on inconsistencies that were "not significant." In his view, "an applicant's testimony should be considered credible as long as it is consistent with the general account put forward by the applicant." That approach,

however, ignores the discretion that the Immigration and Nationality Act (INA) affords factfinders in making credibility determinations.  *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1233 (11th Cir. 2006) (per curiam).  The statute expressly permits an IJ to base a credibility finding on inconsistencies across an applicant's statements *regardless* of whether they go "to the heart of the applicant's claim."  8 U.S.C. § 1158(b)(1)(B)(iii); *see also Chen*, 463 F.3d at 1233 (rejecting applicant's argument that his inconsistencies were "trivial").

Of course, an applicant's inconsistencies must be "relevant" to his credibility—in other words, they should at least bear on his truthfulness.  8 U.S.C. § 1158(b)(1)(B)(iii).  For example, we once rejected an adverse credibility determination based, in part, on the disparity between an applicant's statement that he was dragged to a "truck" and his testimony that he was dragged to a "car."  *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1305 (11th Cir. 2009) (per curiam).  That mere "difference in terminology" was "wholly immaterial" and failed to qualify as "an inconsistency of any importance."  *Id.*  Here, by contrast, the BIA found that Barrios-Barrios's inconsistencies were not only relevant to his credibility but also concerned "material aspects" of his claim, including the nature of the abuse that he suffered.  All things considered, we cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *see also Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1052 (11th

6

Cir. 2009) (per curiam) (upholding adverse credibility determination based on discrepancies over "the severity of the abuse" that the applicant suffered).

Beyond disputing the weight of his inconsistencies, Barrios-Barrios also claims that some of them did not, in fact, exist. True enough, inconsistencies are "not sufficient to support a finding of lack of credibility" when they are "not inconsistencies at all." *Kueviakoe*, 567 F.3d at 1305. The problem for Barrios-Barrios is that the BIA did not rely on any phantom incongruities. For instance, Barrios-Barrios insists that his account of an alleged assault, including his description of the weapon used, "should not be regarded as inconsistent." The agency, however, correctly observed a discrepancy between his initial statement that he was struck with a "machine gun right in the middle of my forehead" and his hearing testimony that he was hit with a metal baton "all around my legs and my feet." Even if reasonable minds could disagree about whether a meaningful difference exists between being struck in the head with a gun and being hit in the legs with a baton, we simply cannot say that no difference exists at all.

Barrios-Barrios also asserts that his inconsistencies were "quite understandable," regardless of their magnitude, because he was nervous and unrepresented at the hearing. That's one possibility, but even "tenable" explanations do not necessarily compel reversing credibility determinations. *Chen*, 463 F.3d at 1233; *see also Shkambi*, 584 F.3d at 1051 (finding that applicant's

7

"fear as an explanation for" his "omissions and inconsistencies" did "not compel a conclusion that" he was credible).  Moreover, we have repeatedly explained that "this court may not substitute its judgment for that of the IJ with respect to credibility findings." *Forgue*, 401 F.3d at 1286 (citing *D-Muhumed*, 388 F.3d at 818).  And whether an applicant's inconsistent testimony should cast doubt on his credibility or simply be chalked up to nerves strikes us as precisely the sort of "judgment call" best left to the IJ.  *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1242 (11th Cir. 2006).  After all, "Immigration Judges, not we, actually see and hear the applicants for asylum testify."  *Id.*  For similar reasons, we cannot upset the BIA's decision based on Barrios-Barrios's suggestion that he might suffer from PTSD.  Although that could explain his inability to recount events with consistency, no record evidence compels that conclusion.  *See Adefemi*, 386 F.3d at 1027 (explaining that "we cannot find, or consider, facts not raised in the administrative forum").

More generally, Barrios-Barrios argues that the agency's whole approach to credibility determinations conflicts with the standard for establishing a "well-founded fear of persecution," as required to obtain asylum.  As Barrios-Barrios points out, the Supreme Court has explained that an asylum applicant need not show that it is "more likely than not" that he will be persecuted.  *INS. v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).  Instead, it is enough that persecution is a

8

"reasonable possibility." *Id.* at 440 (quoting *INS v. Stevic*, 467 U.S. 407, 424–25 (1984)). Given that standard, Barrios-Barrios reasons that the BIA should not make credibility determinations "in a manner that becomes the equivalent of demanding proof that something is more likely than not to be *true*." Pet'r Br. at 23–24 (emphasis added). But to conjoin those standards is to misunderstand them; the fact that an applicant only needs to show a reasonable possibility of *persecution* does not mean that he can skate by on a reasonable possibility that he is *telling the truth*. Under the INA, only "credible" testimony can establish an applicant's eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(ii).

Finally, the documentary evidence that Barrios-Barrios submitted does not compel a contrary conclusion.[1] As the IJ and BIA observed, many of these documents—like the Human Rights Reports and a few of the newspaper articles— described instances of political crime and retribution in Venezuela, but did not involve, much less confirm, Barrios-Barrios's *specific* claims of persecution. Those kinds of background materials cannot independently sustain (or doom) a claim for relief unless "they comment upon or are relevant to the highly specific question of whether *this individual* suffered persecution." *Tang v. U.S. Att'y Gen.*,

---

[1] The IJ likewise did not err in declining to consider documents that Barrios-Barrios provided *after* the deadline that the IJ had set for submitting evidence. *See Kueviakoe*, 567 F.3d at 1306 n.3 (finding that the "IJ did not abuse its discretion by refusing to consider . . . untimely exhibits").

578 F.3d 1270, 1280 (11th Cir. 2009) (citing *Chen v. INS*, 359 F.3d 121, 131 (2d Cir. 2004)); *see also Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006) (per curiam) (upholding denial of asylum despite country report detailing political persecution generally because "the petitioners failed to demonstrate that they will be *singled out* for persecution" (emphasis added)).  Moreover, the documents that actually mentioned Barrios-Barrios—such as the declarations from his family members—failed to satisfy his burden because they largely exacerbated, rather than clarified, the discrepancies in his testimony.

Nor does the record support, let alone compel, the conclusion that the IJ "ignored" this corroborating evidence.  Barrios-Barrios argues, for example, that the IJ "failed to acknowledge" a newspaper article quoting then-President Chavez as saying that the political "opposition has to be killed."  We have, however, repeatedly stressed that neither the IJ nor the BIA needs to "address specifically each claim the petitioner made or each piece of evidence the petitioner presented." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009) (quoting *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006)).  In any event, far from ignoring this evidence, the IJ merely concluded that it failed to substantiate Barrios-Barrios's claim that the government had "hired local criminals" to kill political opponents "with impunity."  The fact that Barrios-Barrios and the IJ disagreed over the import of the evidence does not mean that the IJ failed to

consider it.  Although the IJ "was obligated to consider" the documentary evidence, she "was under no obligation to credit it or assign it decisive weight." *Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1347 (11th Cir. 2008).

IV.

In sum, we find that substantial evidence supports the BIA's adverse credibility determination and, in turn, the agency's denial of asylum.  To that end, we also conclude that the BIA properly denied Barrios-Barrios's claims for withholding of removal and protection under the CAT.  *See D-Muhumed*, 388 F.3d at 819 (explaining that because applicant "cannot meet the 'well-founded fear' standard for asylum, it is *a fortiori* that he cannot meet the withholding of removal standard"); *Forgue*, 401 F.3d at 1288 n.4 ("Because Forgue has failed to establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal or protection under CAT." (citing *Najjar*, 257 F.3d at 1292–93)).  We therefore deny Barrios-Barrios's petition for review.

**PETITION DENIED.**

11